RAMSEY et al. v. MINERAL CREEK MINING CO. et al.

(Third Division. Valdez. December 13, 1913.)

No. 639.

1. PARTIES (§§ 6, 21*)—REAL PARTY IN INTEREST.

Every action shall be prosecuted in the name of or against the real party in interest.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 6, 7, 28; Dec. Dig. §§ 6, 21.*]

2. CONTRACTS (§ 155*)—CONSTRUCTION.

A contract will be most strongly construed against him who prepared it, or who used the words giving rise to the dispute.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 736; Dec. Dig. § 155.*]

3. MINES AND MINERALS (§ 83*)—CONTRACTS.

Where the defendant, under an option to buy, agreed to do development work on mining claims, and also agreed to remove the pay ore encountered and dispose of it, but was to have an allowance of "the reasonable cost of mining and treatment deducted from the proceeds thereof," it was entitled to a credit for the expense of taking out the ore, together with transportation and smelter charges. Judgment for the plaintiffs for the balance.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 212, 214, 215; Dec. Dig. § 83.*]

This is an action for an accounting for the proceeds of gold ore. The case was tried to the court, without a jury.

E. E. Ritchie and Chas. G. Ganty, both of Valdez, for plaintiffs.

Ostrander & Donohoe, of Valdez, for defendants.

BROWN, District Judge. The defendant Mineral Creek Mining Company, while developing certain lode mining claims of plaintiffs', under an option agreement to purchase the same, extracted 46 tons of ore, transported the same to Tacoma, and had it there smelted, receiving, as net returns therefor (after deducting freight charges from Valdez to Tacoma, by steamer, and smelter charges), the sum of $3,384.38.

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

The defendant B. F. Millard took the option in his own name, but the undisputed testimony shows that it was known by plaintiffs that Millard was not taking the same for his own benefit, but as agent or representative for others, and the complaint must therefore be dismissed as to him.

The option agreement contains the following provisions:

"The party of the second part hereby agrees that he will, within a reasonable time, commence the development of the said mining claims, and will pursue such development work with all possible despatch, the surrounding conditions and weather being such as to permit thereof, to the end that 50 feet of pay ore be developed along the vein on said claims, of a character and width to be profitably mined. It is further mutually agreed by and between the parties hereto that the ore encountered by the party of the second part in doing such development work may be removed and disposed of by him, and the reasonable cost of mining and treatment deducted from the proceeds thereof, and the balance of such proceeds shall be deposited in the bank of S. Blum & Co. and be applied upon the deferred payments, as they mature; a statement of such reasonable cost shall be furnished upon demand to the parties of the first part."

The question to be determined is: How much of the expense of "mining" is to be charged against the proceeds of this ore? The plaintiffs claim that only the expense of taking out the ore itself, after it has been uncovered by the development work agreed to be done by the optionee, together with transportation charges (although this is not specifically stipulated in the contract) and smelting charges, should be deducted therefrom. This seems to me to be the necessary and only reasonable construction to be given this contract. To hold otherwise would be to allow the optionee, notwithstanding its express agreement to do development work at its own expense, and in a manner and to an extent entirely within its own control, to pay for all expenses of development, even including cost of machinery, preparations in getting ready, and even promotion charges, out of the proceeds of ore extracted, shipped, and milled by it.

It did not have to run drifts along any vein or veins of ore encountered, except for its own benefit and satisfaction, in order to determine the extent of the same, except, however,

as provided in the provision of said contract, above set forth, that it did agree that "50 feet of pay ore be developed along the vein of said claims, of a character and width to be profitably mined." Supposing only this 50 feet of pay ore had been developed along the vein. Under said provision, and the further stipulation "that the ore thus encountered might be removed and shipped," etc., it seems clear to my mind that plaintiffs could not be charged with the expense of running any tunnel or drift to uncover or expose such vein of ore. If they could be so charged, they could be charged with the expense of sinking a 200-foot shaft, had the optionee so elected, before running a drift along the ore body.

The plaintiff Rutherford testifies that he talked with defendant Millard before the option agreement was signed, about this particular question, and that the above construction to be given the same was so understood between them. Millard testifies that he has no recollection of such a conversation, and says that he does not believe there was any such conversation or understanding. The testimony further discloses the fact that the option agreement, as finally signed, was prepared by or under the direction of Millard. Following a well-settled rule of construction, the contract will be most strongly construed against him who prepared it, or who used the words giving rise to the dispute.

The plaintiffs do not appear to be disposed to quibble, but frankly concede that it would be and is fair to allow for the cost of transportation of said ore, which from the mine to Valdez, over a glacier, is a very heavy item, although not provided for in the contract. The defendant company, however, does not appear to have shown the best of faith in that it furnished to plaintiffs a statement of said cost, which is concededly swollen and false, and which it does not now attempt to substantiate.

Taking this view of the case, therefore, I am constrained to find that the said proceeds from said ore, to wit, the sum of $3,384.38, should be chargeable only with the following items of cost and expense:

Breaking down, sorting and sacking said 46 tons of ore,
$6 per ton, as testified to by Nicholson, defendant's wit-
ness ................................................ $ 276 00
Sacks, $2 per ton ..................................... 92 00
Bogardus ............................................. 30 00
Transporting ore from mine to Valdez .................. 1118 40

—a total of $1,536.40, which, deducted from the said proceeds from said ore, leaves $1,847.98, for which amount plaintiffs are entitled to have judgment against the defendant Mineral Creek Mining Company.

. The testimony of Mr. Deyo, a witness for plaintiffs, shows that about all of this ore was taken from what is called the right-hand drift; according to him, about five tons was taken from the left-hand drift, and little or none of it from the stope above the drift. The witness Deyo, under whose direction this ore was actually broken down and sacked, is the only witness who testified who has actual, personal knowledge in the matter. While he says the cost of so breaking the ore down and sacking it was very little, that he and two others, who were engaged in surveying the ground, did the breaking down at odd times, still I am disposed to allow the $6 per ton for breaking down of ore, sorting, and sacking, as testified to by the witness Nicholson.

I cannot accept the suggestion of counsel for the defendant that the fact that said defendant company expended a large sum of money in developing this property with a view to purchasing it, which it has lost, is of any controlling importance in this case. The defendant knew, when it entered upon this enterprise, the hazardous nature of the undertaking; and, had the development work disclosed ore rich far beyond the hope or expectation of either party to the contract, this would have been the good fortune of the optionee, and it would not have listened to any claims of the optioners, beyond the strict or legitimate terms of the agreement.

Findings, conclusions, and judgment may be prepared in accordance herewith.